UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────────────────x

BRETT KLEIN,

                Plaintiff,

    -against-

JASON LEVENTHAL,

               Defendant.
───────────────────────────────────────────x

16 Civ. 2719

**COMPLAINT**

Plaintiff Brett Klein, by and through his attorneys, Cuti Hecker Wang LLP, for his Complaint alleges as follows:

## NATURE OF THE ACTION

1.    For more than ten years, Plaintiff Brett Klein ("Klein") and Defendant Jason Leventhal ("Leventhal") – who met in college and, until recently, were close friends – were partners in a successful law practice, Leventhal & Klein, LLP ("L&K," the "Firm," or the "Partnership"). L&K specialized in representing plaintiffs in civil rights matters, including litigation against municipalities and individual police and corrections officers for violating the constitutional and other rights of arrestees and inmates in jails and prisons.

2.    As the Firm became more successful over the years, Klein grew increasingly disillusioned by his disproportionate contribution to its success. Klein handled substantially all aspects of the Firm's heavy litigation docket single-handedly. With only rare exceptions, Leventhal did not do any actual litigation at all. Leventhal's role was to run the Firm administratively and to handle new client intake and the investigation of potential new matters (many of which had been referred to the Firm through Klein).

3. Notwithstanding Klein's reluctance to sever professional ties with his close friend of so many years, after carefully considering his professional future for a long period of time, Klein finally informed Leventhal, in or about April 2015, that he intended to leave L&K and form his own separate law practice. Klein and Leventhal in fact ceased practicing together on or about July 1, 2015.

4. In connection with Klein's departure from L&K, Klein and Leventhal discussed, among other things, the Partnership's caseload, and the future distribution of any fees generated in cases in which L&K had been retained. L&K handled cases exclusively on a contingency fee basis, and both partners understood that it was not possible to predict the amount of work that each existing L&K case would require in the future or the extent to which fees would be generated. They therefore expressly agreed to share the potential risks and rewards of the existing L&K cases the same way they had always done: on a 50-50 basis, sharing equally any net fees generated by those cases.

5. In addition to reflecting Klein and Leventhal's longstanding practice, their express agreement to share fees generated by any existing L&K cases offered important benefits for both the partners and their clients. It avoided thorny disputes that otherwise would have arisen about which partner would keep the most valuable cases (because each partner was assured an equal share of net fees regardless of which cases he took). It also removed any incentive the partners otherwise might have had to try to persuade clients to choose one partner over the other. The parties' 50-50 agreement encouraged a constructive and collaborative relationship between and among them and their clients, and it assured that each partner would continue to have a strong financial interest in the success of all existing L&K cases.

6. Klein relied upon the 50-50 agreement in a critical way. Leventhal proposed a division of cases that assigned a disproportionate number of the highest-value cases to himself, including a wrongful conviction case that Klein had originated and had been litigating, and that the partners expected to settle for millions of dollars. Klein never would have agreed to the division of cases that Leventhal proposed but for their express agreement to share fees in all of those cases equally. Klein agreed to Leventhal's proposed division of cases without requesting any modifications, including by allowing Leventhal to take the lead in the wrongful conviction case going forward, precisely because the partners expressly agreed that all fees in all of those cases would be divided equally (and because Klein wanted to make his departure as smooth as possible for the benefit of both of them and their clients).

7. Subsequently, after Klein agreed to Leventhal's proposed division of existing L&K cases in reliance upon Leventhal's promise that all fees in those cases would be split equally, Leventhal disavowed the 50-50 agreement, taking the untenable position that he is entitled to keep a disproportionate share of the fees earned in L&K cases on which he worked after the Partnership ceased.

8. In particular, Leventhal contends that he is entitled to keep the vast majority of the Firm's $1 million fee in the wrongful conviction case, which recently settled – even though Klein originated that case and handled the litigation prior to his departure, even though Leventhal never entered into a new retainer with the client or entered an appearance in his new firm's name, and even though almost nothing happened in the litigation after Klein left the Firm other than the preparation of expert reports, which were handled by another firm that was co-counsel on the case, and continued settlement discussions.

9. Klein made many attempts to resolve this dispute amicably before resorting to litigation with his old friend and former partner, but his efforts were unsuccessful. This action therefore seeks to compel Leventhal to abide by the parties' express 50-50 agreement.

## JURISDICTION AND VENUE

10. The jurisdiction of this Court is predicated upon 28 U.S.C. § 1332(a)(1) because Plaintiff is a citizen of a different state than Defendant, and because the matter in controversy exceeds the sum of seventy-five thousand dollars ($75,000) exclusive of interest and costs.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred here.

## PARTIES

12. Plaintiff Brett Klein is an individual residing in Bellmore, New York, in the County of Nassau, New York.

13. Defendant Jason Leventhal is an individual residing in Colts Neck, New Jersey, in the County of Monmouth, New Jersey.

## FACTUAL ALLEGATIONS

**A.     Background**

14. Klein and Leventhal met in September 1990 as freshmen at Binghamton University. They lived in the same dormitory, joined the same fraternity, and were close friends.

15. They both graduated from Binghamton University in 1994.

16. Klein went on to Brooklyn Law School, from which he graduated in 1997.

17. Leventhal went on to Fordham University Law school, from which he graduated in 1997.

18. Klein and Leventhal both passed the New York and New Jersey bar examinations in 1997, and were admitted to practice in those jurisdictions thereafter.

19. Klein's first position after law school was as an Assistant Corporation Counsel in the New York City Law Department ("Law Department").  During his first year in that office, Klein investigated and prosecuted juvenile delinquency matters in Family Court.

20. After approximately one year, Klein was assigned to the Special Federal Litigation division of the Law Department, where he defended the City and law enforcement officials who were sued in federal court for violating 42 U.S.C. § 1983 and other civil rights laws.

21. Klein served in the Special Federal Litigation division for five years.  He rose to the level of senior counsel and was responsible both for supervising a team of approximately ten lawyers and for personally litigating some of the highest profile lawsuits brought against the City of New York.

22. Leventhal's first position after law school was with the Staten Island District Attorney's Office.  He left that job shortly thereafter to accept a position with a law firm on Staten Island that defended Allstate Insurance Company.  Leventhal stayed at that firm briefly and then left to begin his own solo practice, which focused primarily on criminal defense work.

**B.    Klein and Leventhal Form L&K**

23. In January 2004, Klein left the Law Department with the goal of starting a solo civil rights practice.

24. Leventhal invited Klein to work out of his office on Staten Island until Klein's practice developed.

25. Shortly thereafter, Klein and Leventhal realized there was a synergy between Leventhal's criminal defense practice and Klein's extensive civil rights experience.

26. In or about February 2004, Klein and Leventhal formed L&K.

27. In 2005, L&K sub-leased an office in Brooklyn for Klein to enable him to work in closer proximity to the federal courthouses in Manhattan and Brooklyn. Klein regularly appeared in those courthouses on civil rights matters, as well as at the Law Department's offices, where depositions were frequently held in his cases.

28. When L&K first sub-leased an office in Brooklyn, Leventhal was not involved in L&K's civil rights cases. Leventhal worked on his own criminal cases from L&K's Staten Island office.

29. In 2007, L&K's headquarters moved to 45 Main Street, Suite 230, in Brooklyn, New York, and remained at that location until Klein left in 2015.

30. L&K continued to maintain its Staten Island office, primarily for the convenience of its clients, but both partners generally worked from the Brooklyn office beginning in 2007.

31. Leventhal and his new solo firm continue to occupy the headquarters that L&K had used at 45 Main Street. Although L&K paid a significant security deposit to the landlord, Two Trees Management Company, Leventhal has not returned Klein's share of the security deposit, nor has he responded to Klein's repeated inquiries about the status of the security deposit and whether Leventhal's new firm, Leventhal Law Group, P.C. ("LLG"), has a new lease or continues to use the L&K lease.

32. Klein's calls to Two Trees Management concerning the status of the L&K lease and security deposit have not been returned.

### C. L&K's Docket, the Division of Work Within the Firm, and the Distribution of Profits and Losses

33. In the early years of L&K, the Firm featured a diverse docket, including criminal defense cases, personal injury cases, family court cases, and civil rights cases. Leventhal focused primarily on the criminal cases, and Klein primarily handled all of the civil litigation.

34. As time went on, the Firm sharpened its focus, and began taking on more civil rights cases and fewer non-civil rights cases. Within a few years, L&K became almost exclusively a civil rights firm.

35. During the time that L&K's civil rights docket was expanding, Leventhal continued to handle criminal defense cases. Klein was primarily responsible for litigating all of the Firm's civil rights cases.

36. As the Firm's civil rights practice became increasingly successful, Leventhal took on fewer criminal defense cases, and ultimately stopped practicing criminal defense.

37. Once L&K became almost exclusively a civil rights firm, Leventhal's role in the Firm (with a few rare exceptions) was to handle administrative matters, client intake, pre-litigation claim investigation, and pre-litigation claim preparation. With only rare exceptions, Leventhal did not handle any aspect of the Firm's civil rights cases after litigation was commenced, other than continued interaction with clients.

38. With only rare exceptions, Klein was exclusively responsible for handling all aspects of the Firm's litigation docket after a case was commenced, from pleading through discovery, motion practice, negotiating all settlements, and handling all trials.

39. By way of illustration of Klein's disproportionate responsibility for conducting the Firm's litigation, this Court's PACER system reports Klein as counsel of record in more than 600

7

cases. Leventhal, in contrast, according to PACER, is counsel of record in fewer than 90 cases before this Court, and he did not appear in many of those cases until at least May 2015, after Klein informed Leventhal that Klein would be leaving L&K.

40. In addition to shouldering substantially the entire burden of litigating L&K's cases, Klein also brought in a significant share of the Firm's business.

41. Despite the fact that Klein handled substantially all aspects of the Firm's litigation by himself, that Leventhal's role was limited to pre-filing investigations and office management, and that Klein brought in a substantial percentage of the Firm's business, Klein and Leventhal always shared the Firm's profits and losses equally.

42. At its peak, the Firm was filing on average approximately sixty federal civil rights cases per year.

D.   **Klein Informs Leventhal of His Desire to Leave the Firm**

43. Beginning in 2014, Klein expressed to Leventhal that he was frustrated with the division of labor and growing increasingly concerned by Leventhal's frequent disrespect and apparent jealousy of Klein's litigation successes.

44. In or about August 2014, Klein informed Leventhal that he would not renew the Firm's lease (which had expired earlier in 2014) and intended to leave the Firm to launch his own civil rights practice.

45. Leventhal apologized to Klein for being disrespectful, acknowledged the significant imbalance between the partners' responsibilities for litigating the Firm's cases, and asked Klein to stay.

46. Klein was responsible for trying a case before this Court that month, and talks were postponed so that Klein could focus on the trial. Klein tried the case to a successful verdict, and continued to handle a disproportionate share of the Firm's docket.

47. Klein agreed to sign a renewal lease for two years, with a sixty-day cancellation clause.

48. By February 2015, the relationship between Klein and Leventhal had further deteriorated. Klein informed Leventhal that he was still unhappy. Leventhal was again apologetic, and again asked Klein to stay.

49. In early March 2015, Klein informed Leventhal that he had not changed his mind about the Firm's unsustainably inequitable division of work and his desire to leave. Leventhal took a two-week vacation later that month, leaving Klein responsible for a crushing docket of depositions, motions, and court appearances.

50. On April 17, 2015, Klein informed Leventhal definitively that he was leaving the Firm effective July 1, 2015.

E. **Klein and Leventhal Agree to a Distribution of Cases and a Division of Fees Post-Dissolution**

51. Prior to Klein's departure, Klein and Leventhal always shared the Firm's profits and losses equally.

52. In the period leading up to Klein's departure from the Firm, Klein and Leventhal discussed how to divide the Firm's existing cases and the fees generated by such cases.

53. Klein and Leventhal initially agreed to continue their existing 50-50 arrangement for all clients that were retained by L&K prior to July 1, 2015 (including both cases that the Firm already had filed in a court, and cases that the Firm was investigating and preparing to file in a

court in the future). The partners initially agreed that regardless of which attorney represented such a client going forward, any attorneys' fees recovered in the case, and any losses incurred, would be divided between them equally.

54. As for prospective clients who had been referred to the Firm prior to July 1, 2015, but who had not yet retained L&K, Klein and Leventhal agreed that if such a prospective client had been referred to Leventhal, he would take the case individually through his new firm, and if the prospective client had been referred to Klein, Klein would take the case individually through his new firm (assuming, of course, the client agreed).

55. On or about July 1, 2015, Leventhal and Klein met at the Firm's offices at 45 Main Street in Brooklyn. Leventhal presented Klein with a list of the active cases that the Firm already had filed in court. The document listed approximately 60 cases and divided them in half, with approximately 30 assigned to Klein and approximately 30 assigned to Leventhal. Leventhal asked Klein to agree to this proposed split of already filed Firm cases.

56. Klein reviewed the list and immediately noted that Leventhal had assigned to himself more of the cases that the parties believed were likely to be the most profitable, and had assigned fewer such cases to Klein.

57. Klein confronted Leventhal about this imbalance and sought re-confirmation of their agreement to split all of the net fees in all of these cases (and in all of the cases in which L&K had been retained but had not yet commenced litigation) equally, regardless of which partner was assigned the case.

58. Leventhal expressly reaffirmed the parties' 50-50 agreement.

59. Leventhal expressly promised Klein that if Klein agreed to Leventhal's proposed case distribution, Klein would be entitled to collect half of the net fees in each of the cases on the

10

list, regardless of which partner took over the case, consistent with the parties' longstanding practice as partners.

60. Given the parties' express 50-50 agreement and Leventhal's express promise about the 50-50 division of fees in all of the already filed cases, Klein agreed to Leventhal's proposed distribution without requesting a single modification, despite the fact that Leventhal would be handling a larger share of the higher value cases going forward, including especially the wrongful conviction case that Klein had originated and litigated and that the partners correctly expected would settle for millions of dollars.

61. As to the Firm's extensive unfiled caseload – matters in which the Firm had been retained but had not yet commenced litigation – the parties agreed that they would divide those cases at a later date.

62. On or about July 1, 2015, Klein moved out of L&K's offices at 45 Main Street. He took the files for the cases that the parties agreed were assigned to him, and he left L&K's remaining case files at the 45 Main Street office.

63. Leventhal agreed that Klein would continue to have access to all L&K files, including all case files and all financial and administrative files, as needed.

64. Klein and Leventhal scheduled a follow-up meeting for July 6, 2015 to discuss remaining wind-down issues, including the division of the cases in which L&K had been retained but had not yet commenced litigation.

65. At the July 6 meeting, which was held at the 45 Main Street office, Leventhal informed Klein that he already had solicited and signed new retainer agreements with clients with unfiled cases who previously had retained L&K. Notwithstanding Leventhal's express prior

agreement that fees in such cases would be split between the parties equally, Leventhal informed Klein that he had changed his mind and no longer wished to agree to a 50-50 split on unfiled cases.

66. Leventhal took the position that with respect to unfiled cases, Klein and Leventhal should be free to sign up such clients individually, and to proceed with such clients' cases individually, with any resulting fees split proportionally between L&K and the partner continuing the case based on the work each performed.

67. Klein was put off by Leventhal's repudiation of their prior agreement regarding unfiled cases, but Klein nevertheless agreed to allow Leventhal the modification he sought. Klein sincerely wanted his departure to go as smoothly as possible, and he was willing to bend to make that happen.

68. Moreover, and critically, Klein was not concerned about whether the parties would divide fees equally in unfiled cases because the parties had not yet divided those cases between them, and Klein was free to compete with Leventhal and attempt to be retained by clients who had unfiled cases Klein was interested in litigating.

69. The same was not true, however, of the already filed L&K cases because Klein never would have agreed to Leventhal's proposed division of those cases (which assigned more of the higher value cases to Leventhal, including especially the wrongful conviction case) but for the parties' express agreement that they would share the net fees in all such cases 50-50.

70. For these reasons, Klein informed Leventhal that he would agree to Leventhal's proposed modification of their agreement with respect to unfiled cases, but only if Leventhal reaffirmed their 50-50 agreement with respect to already filed cases.

71. Leventhal expressly agreed, reaffirming his promise to split all net fees from already filed cases with Klein 50-50.

12

### F. The Post-Split Relationship Between Klein and Leventhal

72. Following their split on or about July 1, 2015, Klein and Leventhal communicated with one another from time to time about the status of various L&K cases.

73. As to the filed lawsuits that Klein took over, Klein's new firm, Brett H. Klein, Esq., PLLC (hereinafter "Klein Civil Rights"), continued to litigate the already filed L&K cases that had been allocated to Klein.

74. As to the filed lawsuits that Leventhal took over, LLG continued to litigate the already filed L&K cases that had been allocated to Leventhal.

75. In the weeks and months after Klein left L&K, Leventhal regularly sent Klein emails informing him that pursuant to the partners' modified agreement regarding unfiled cases, LLG had been retained by a L&K client and would be handling the litigation going forward.

76. Klein never objected to any of these announcements because they were consistent with the parties' modified agreement regarding clients with unfiled cases.

77. On July 13, 2015, Klein received an email from Leventhal informing him that LLG had been retained by a client for whom L&K had filed a lawsuit and was actively litigating.

78. Klein immediately called Leventhal about the email to confirm that notwithstanding the new retainer, any fees from the representation would be split 50-50 pursuant to the parties' express agreement.

79. Leventhal again reaffirmed that the partners had agreed to split fees 50-50 in all cases that L&K already had filed prior to July 1, 2015.

80. After July 13, 2015, Leventhal continued regularly to send Klein emails stating that LLG had been retained by L&K clients whose cases had not been filed. But Leventhal never once sent another email stating that LLG had been retained by an L&K client whose case had been filed.

### G. Leventhal Repudiates the Parties' Agreement

81. In July 2015, Klein requested that the parties memorialize their verbal 50-50 agreement in writing. Leventhal asked that Klein draft a proposed written agreement.

82. Klein presented a draft written agreement to Leventhal on or about August 10, 2015.

83. That same day, Leventhal responded to Klein's proposed draft by asserting for the first time that he supposedly had not agreed to split fees in already filed L&K cases 50-50.

84. Leventhal's statement that he had not entered into such an agreement was false.

85. Klein never would have agreed to Leventhal's proposed division of already filed cases but for Leventhal's agreement that the fees in all such cases would be split evenly.

86. Klein so informed Leventhal.

87. Leventhal indicated that he would review Klein's draft and get back to Klein. However, Leventhal did not respond for months. Indeed, Leventhal did not respond until he learned that Klein's new firm, Klein Civil Rights, had received significant fees in already filed L&K cases (none of which have been distributed; Klein has held all such fees in escrow pending the resolution of this dispute).

88. Leventhal insisted, in blatant breach of his prior promises, that the fees in already filed cases (including of course the particularly high value cases he had kept for himself) should be split between L&K and the attorney who continued the cases on a pro rata basis, notwithstanding the parties' express and repeatedly reaffirmed 50-50 agreement.

89. Klein attempted to engage Leventhal on numerous occasions to urge him to honor their 50-50 agreement, reminding Leventhal that Klein never would have agreed to the patently

14

one-sided distribution of already filed cases if the partners had not agreed to share profits and losses from all such cases equally.

90. During a phone call in January 2016, Leventhal again acknowledged that there was an agreement to split fees 50-50, but insisted, without any justification, that the agreement allegedly was not "workable."

91. In April 2016, the wrongful conviction suit discussed above, which Klein had originated and litigated, and which Klein had agreed to allow Leventhal to take over only because of Leventhal's promises that the fees would be split 50-50, settled for $4,500,000, generating a $1 million fee for the Firm.

92. Leventhal did not tell Klein about the settlement for several weeks, despite the fact that L&K was still counsel of record in the case, that Klein had brought the case to the Firm, that Klein was heavily involved in the litigation prior to his departure, and that the case was subject to the parties' 50-50 agreement.

93. Not only did Leventhal fail to disclose the settlement, but once he did, he insisted that he was entitled to a grossly disproportionate share of L&K's fee, despite the parties' 50-50 agreement, and despite the fact that almost nothing happened in the litigation after Klein's departure other than the preparation of expert reports, which were handled by another firm that is co-counsel on the case, and continued settlement negotiations.

94. While Klein has held all fees derived from already filed 50-50 cases in escrow in the hope of resolving this dispute amicably, upon information and belief, Leventhal has disbursed such fees to himself, without Klein's permission, and in breach of his fiduciary duty to Klein to preserve L&K's assets pending any accounting and distribution of Firm assets.

95. Leventhal is further preventing Klein from accessing books, records, and files of L&K that Klein is entitled to inspect as a partner of the Firm.

### FIRST CAUSE OF ACTION
**(Declaratory Judgment)**

96. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

97. Klein and Leventhal agreed that any fees earned in cases filed by L&K prior to July 1, 2015 would be divided 50-50 between Klein and Leventhal, irrespective of which partner handled the case after July 1, 2015.

98. Klein and Leventhal's agreement reflected their prior course of dealing, in which they always split profits and losses 50-50, and sought to avoid subsequent disputes about the distribution of fees or how the partners divided their caseload.

99. Plaintiff is entitled to and demands a declaratory judgment that the fees from any cases filed prior to July 1, 2015 must be divided 50-50.

### SECOND CAUSE OF ACTION
**(Breach of Contract)**

100. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

101. Klein and Leventhal agreed that any fees accrued in cases filed by L&K prior to July 1, 2015 would be divided 50-50 between Klein and Leventhal, irrespective of which partner handled the case after July 1, 2015.

102. Leventhal repudiated this agreement with Klein by insisting that he is entitled to a disproportionate share of fees collected in L&K cases filed before July 1, 2015, and by refusing to distribute to Klein the 50% share of fees Klein is due.

103. Leventhal's acts and omissions described above constitute a breach of the parties' agreement.

104. Klein has fully performed his duties under the agreement, and there is no excuse in law or fact for Leventhal's breach.

105. As a direct and proximate cause of the foregoing, Klein has sustained monetary damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**(Promissory Estoppel)**

106. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

107. Leventhal clearly and unambiguously promised Klein that the parties would split 50-50 all net fees from all cases that had been filed by L&K prior to July 1, 2015.

108. Klein reasonably and detrimentally relied on Leventhal's promise by allowing Leventhal to divide L&K's cases in a manner that plainly would have favored Leventhal and would have allowed him to recover an inequitable portion of the fees from L&K's cases (including multiple cases that Klein brought to the Firm) in the absence of a 50-50 agreement.

109. Klein's reasonable and detrimental reliance on Leventhal's promise was foreseeable to Leventhal.

110. As a direct and proximate cause of Leventhal's failure to abide by his clear and unambiguous promise on which Klein reasonably and foreseeably relied to his detriment, Klein has sustained monetary damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (Accounting)

111. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

112. Klein and Leventhal were the sole partners of L&K, and they had a confidential and fiduciary relationship to one another concerning the operation of L&K.

113. Leventhal was entrusted with partnership property, and was primarily responsible for maintaining the books and accounts of L&K on behalf of Klein and Leventhal.

114. Klein has demanded that Leventhal share information regarding L&K's assets and liabilities, but Leventhal has abused his position and exclusive access to L&K's books and records by refusing to share information with Klein about L&K's finances.

115. Leventhal has diverted or wasted partnership assets and funds without justification.

116. Klein has no adequate remedy at law.

117. Accordingly, the Court should order a thorough and detailed accounting of the Partnership, and should ensure that each partner has been allocated his fair share of Partnership income and assets.

## FIFTH CAUSE OF ACTION
### (Breach of Fiduciary Duty)

118. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

119. As a former partner of L&K, Leventhal owes Klein a fiduciary duty with respect to the winding up of the Partnership.

120. Upon information and belief, Leventhal has breached his fiduciary duties to Klein by, among things, diverting partnership funds and assets to himself and by failing disclose information about L&K's assets and liabilities.

121. As a direct and proximate cause of the foregoing, Klein has sustained monetary damages in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION
**(Unjust Enrichment)**

122. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

123. Defendant has enriched himself by taking fees from cases initiated by L&K and failing to distribute those fees according to the actual value that Defendant added to the cases after the dissolution of L&K.

124. Defendant did so at Plaintiff's expense.

125. It would be against equity and good conscience to permit Defendant to retain what Plaintiff seeks to recover.

126. As a direct and proximate cause of the foregoing, Plaintiff has been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendant as follows:

a. Immediately enjoining Leventhal from transferring to himself or diverting any partnership assets, including any fees earned in cases for clients that were retained by L&K prior to July 1, 2015, absent agreement of the parties or Court order;

b. Declaring that under Klein and Leventhal's agreement, any fees earned in cases that L&K had initiated prior to July 1, 2015 must be distributed evenly between Klein and Leventhal;

c. In the alternative, if the fact-finder determines that Klein and Leventhal did not have such an agreement, entering an ordering directing an accounting and fair distribution as between Klein and Leventhal of L&K's assets;

d. Awarding Plaintiff damages for breach of contract, breach of fiduciary duty, and unjust enrichment;

e. Awarding pre-judgment interest and post-judgment interest; and

f. Awarding such other and further relief as this Court may deem just and proper.

Dated: New York, New York
May 27, 2016

By: _____
Eric Hecker (EH 0989)
(ehecker@chwllp.com)
Alexander Goldenberg (AG 1128)
(agoldenberg@chwllp.com)
CUTI HECKER WANG LLP
305 Broadway, Suite 607
New York, New York 10007
(212) 620-2600

*Attorneys for Plaintiff Brett Klein*